Frank Rogers, et al v. C. R. Mason, et al

5-4811          436 S.W. 2d 827

Opinion Delivered February 3, 1969

[Rehearing denied March 3, 1969.]

*Bill J. Davis* and *Brown, Compton, Prewitt & Dickens* for appellants.

*Spencer & Spencer* for appellees.

Carleton Harris, Chief Justice. On February 17, 1968, an election was held in Calion, a second class city located in Union County, on a proposal to annex some 1500 acres to the city. One hundred and sixteen votes were cast for the proposal, and 107 votes were cast against it. Only one polling place was provided for the election, and the polls were closed at 6:30 P.M., one hour before the time provided by statute[1]. The record reflects that there were 303 qualified to vote in the election, and 78 of these did not vote[2]. The election result

---

[1] Ark. Stat. Ann. § 3-908 (Supp. 1967): "The polls shall be opened at eight (8) o'clock a.m., and shall remain open continuously until seven-thirty (7:30) o'clock, p.m." This provision changing the closing time from 6:30 P.M. to 7:30 P.M., was enacted by the General Assembly in 1967.

[2] It is evident that one of the figures appearing in the record is incorrect, for the total of the votes for, votes against, and persons not voting, actually totals 301.

was announced about 7:00 P.M. Appellants filed an election contest within the proper time, but, on hearing, the complaint was dismissed by the trial court. From the judgment so entered, appellants bring this appeal. For reversal, it is asserted that Ark. Stat. Ann. § 3-908 (Supp. 1967) is mandatory; that Ark. Stat. Ann. 19-1101.3 (Repl. 1968) (which requires a polling place for each ward in a city of the second class), is also mandatory, and finally it is contended that the failure of election officials to follow the directions of a mandatory statute, results in placing the burden of proof in an election contest on the contestees, instead of the contestants.

We find no merit in any of the points raised by appellants. It is argued by appellants that the failure to strictly comply with the aforementioned statutes had the effect of invalidating the election. It might first be said that such a provision is not included in the statutes under discussion, and the contention is absolutely contrary to several of our cases.

As to closing the polls one hour early, this court held such a contention to be without merit as long ago as 1880. In *Holland, as Collector,* v. *Davies,* 36 Ark. 446, the polls at a district school election were closed two and one-half hours early; the validity of the election was challenged on several grounds, including this particular averment, but this court held to the contrary, stating:

"The provision of the statute fixing the time of closing the polls of an election is directory and not mandatory. Manifestly an election should not be set aside and the object for which it was held defeated, though the law has not been strictly complied with, *where no obstruction or impediment to a fair expression of the will of the electors is Shown*"[3].

---

[3]Emphasis supplied.

Here, only three witnesses testified. The County Clerk testified as to the number of persons voting, the number of qualified electors not voting, the result of the election, and the fact that only one polling place was provided. It was stipulated that the polls were closed at 6:30 P.M. Robert D. Walker testified that he was present at the polling place from 6:30 P.M. until 7:00 P.M., and no one came to vote during that period. He said that his wife announced the result of the election at approximately 7:00 P.M. Otis Williams testified that he was also present at the polling place in Calion, and that no one came there between 7:00 and 8:00 P.M.

It will be noted that not a single individual testified that he went to the polling place to vote, and found the polls closed, or that he did not go to vote because he had already learned that the polls had closed. In other words, there is no evidence that anyone who desired to vote was deprived of that right. Though appellants, in answering interrogatories (unverified and not introduced), listed 88 persons (10 more than the record reflects were eligible) as having been denied the right to vote, no such testimony was offered[4]. Surely, if the early closing resulted in denying the privilege of the vote to numerous people, some would have come forward to so testify.

Likewise, the contention that the election was invalid because there was only one polling place open is without merit. The same general rule covers this situation. In *Orr* v. *Carpenter,* 222 Ark. 716, 262 S.W. 2d 280, this court, quoting an earlier case, said:

"To hold that all prescribed duties of election officers are mandatory, in the sense that their non-performance shall vitiate the election, is to ingraft upon the law the very powers for mischief it was intended to prevent. If the mistake or inadvertence of the officer shall be fatal to the election, then his

---

[4]There was no allegation of how these people would have voted, i.e., whether they favored the proposal or were against it.

4

intentional wrong may so impress the ballot as to accomplish the defeat of a particular candidate or the disfranchisement of a party. And it is no answer to say that the offending officer may be punished by the criminal laws, for this punishment will not repair the injury done to those affected by his acts. It is the duty of the courts to uphold the law by sustaining elections thereunder that have resulted in full and fair expression of the public will, and, from the current of authority, the following may be stated as the approved rule: All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, *unless of a character to affect an obstruction of the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provision affects an essential element of the election,*[5] or unless it is expressly declared by the statute that the particular act is essential to the validity of the election, or that its omission shall render it void.''

As to proof, the discussion under Point 1 also applies here, *i.e.*, not a single person testified that he or she was deprived of voting because only one polling place was provided.

While we do not condone irregularities, it is, we think, quite evident that no voter was deprived of the constitutional right to express himself in this election. We recognize, as mentioned by appellant, that it would have been well nigh impossible for a court order to have been obtained at 6:30 P.M., requiring that the polling place remain open until 7:30 P.M. However, the italicized language in both *Holland, as Collector* v. *Davies, supra,* and *Orr* v. *Carpenter, supra,* makes clear that where the failure to observe the statute affects an essential element of the election or prevents a fair ex-

---

[5]Emphasis supplied.

pression of the will of the electors, the rule is different[6].

Appellants are in error in stating that the burden of proof should have been placed upon the contestees, rather than the contestants. In *Pogue* v. *Grubbs*, 230 Ark. 805, 327 S.W. 2d 4, we pointed out that, in an election contest, the official returns are *prima facie* correct, and the burden is on the contestant to show to the contrary by affirmative proof.

Affirmed.

---

[6]In **Bingamin v. City of Eureka Springs,** 241 Ark. 477, 408 S.W. 2d 607, the statute relative to the manner of applying for and voting an absentee ballot, was violated. Though the suit was not filed until after the election, we invalidated the votes of six persons, finding, in effect, that the violations were such as to obstruct the free and intelligent casting of the vote, and that the challenged ballots affected the result; in other words, the violations concerned an essential element of the election. The invalidation of the six ballots changed the election result.