Levi PHILLIPS, Cindy George and Jack Mase
in Their Capacity as Carroll County Election Commissioners
*v.* Bill EARNGEY and Joseph A. McClung

95-367                                                            902 S.W.2d 782

Supreme Court of Arkansas
Opinion delivered July 17, 1995

*Kenneth Elser*, Deputy Prosecuting Att'y, for appellants.

*John R. Elrod* and *Ruth A. Wisener*, for appellees.

ROBERT L. BROWN, Justice. This case involves an election contest brought by Bill Earngey against appellants Levi Phillips, Cindy George, and Jack Mase in their capacity as Carroll County Election Commissioners. The election at issue was for the position of alderman for the City of Eureka Springs. One candidate for the position was Bill Earngey. The other candidate was Louise Berry. Between date of filing as candidates and election date, which was November 8, 1994, Louise Berry died. The election, however, was certified by the Election Commission in her favor by a vote of 522 to 521.

On December 1, 1994, Earngey filed his complaint, alleging that more than 30 ineligible voters voted in the alderman's election and that "all or a majority of the above voters ineligible to vote in Eureka Springs municipal elections voted for the late Louise Berry." Earngey prayed that a hearing be held and that he be declared the winner of the election.

On December 7, 1994, appellee Joseph A. McClung moved to intervene in the election contest on the basis that the Election

Commissioners could not protect his interest and that the location of one's house outside the city limits is not determinative of one's residency. He sought certification of a class of those similarly situated, a determination of eligibility to vote based on residency, and a declaration that Louise Berry be declared the recipient of a majority of the votes. On January 5, 1995, the Election Commissioners moved that a representative of the deceased successful candidate, Louise Berry, be joined in the lawsuit as a necessary party. The circuit court then granted McClung's motion to intervene, apparently on behalf of himself and others similarly situated.

On January 23, 1995, the McClung class filed a motion to invalidate the election results because the Election Commissioners had failed to number the ballots, thus making it impossible to determine how the challenged voters voted. In the alternative, they sought a continuance to conduct discovery.

On March 7, 1995, the circuit court granted what it termed to be a "joint motion" to set aside the election results. The joint movants were plaintiff Bill Earngey and the McClung class as intervenors. The Election Commission was a nominal party, according to the court. The court found that the results of the Earngey/Berry contest were "so uncertain as to prevent the determination of the true winner" and that the failure of the Election Commissioners to number the ballots caused election contest procedures not to work effectively. The order then stated:

> That the Court has given considerable time and research to the issue of who should participate in the newly called election and feels that the fairest and best way for the people of Eureka Springs to place in office the person of their choice is to open the filing period to any qualified candidate. The Court is mindful of the interest Mr. Earngey has in the matter, but those interests, when in conflict with those of the electorate, must be subordinated to those of the people.

The court ordered the Election Commission to conduct a special election for alderman which would be open to any qualified candidate. From that order, the Election Commissioners have appealed. Bill Earngey did not appeal.

■ We first consider whether the Election Commissioners have standing to prosecute this appeal. The case of *Rubens* v. *Hodges*, 310 Ark. 451, 837 S.W.2d 465 (1992), is instructive on this point because it involved a deceased candidate who had prevailed in the election for justice of the peace by seven votes. The losing candidate sued the Election Commission and alleged that one voting machine had broken down in one precinct and that in another precinct eligible voters were directed to a voting machine which did not have the J.P. race on the ballot. The Election Commission, as in the instant case, responded that a representative of the deceased winner should be joined as a necessary party. No representative was joined. The Crittenden County Quorum Court then declared a vacancy in the position. The unsuccessful candidate moved for summary judgment, and the circuit court granted the motion and set aside the quorum court's resolution declaring a vacancy. We reversed the order of summary judgment. In doing so, we discussed the role of the Election Commission:

> In an *election contest*, as distinguished from an action seeking to *void an election*, we have said the election commission is not the proper party defendant, *Henry* v. *Stuart*, 251 Ark. 415, 474 S.W.2d 165 (1971), although it is a proper nominal defendant. The reason is the commission's function is to promote fair elections, to act in a disinterested manner in disputes between candidates or their representatives, and to take neither side in a contest.

*Rubens*, 310 Ark. at 454, 837 S.W.2d at 467. In *Rubens*, we referred to the fact that election contests are governed by statute and that there was no statute governing who is a proper party defendant in such matters. We did not, however, resolve the issue of whether the Election Commission was a proper party in that case because the case was decided on different grounds. We did invite the General Assembly to enact legislation to govern fact situations like that in the *Rubens* case.

■■ In the matter before us, the Election Commissioners were nominal parties in circuit court, with Earngey representing his candidacy as plaintiff and the McClung class apparently representing their own interests and purportedly the interests of the decedent, Louise Berry, in opposing Earngey's election contest

allegations.[1] However, because the trial court found it was "prevented" from determining an election contest winner, it granted the joint motion of Earngey and the McClung class and ordered the Election Commission to call a special election open to all qualified candidates. Undoubtedly, because it assumed that the election was appropriately called, the Election Commissioners brought this appeal to determine who could qualify as candidates in the election. While the Election Commissioners, as nominal parties, do have standing to bring an appeal under these unique circumstances, the parties and the circuit court were wrong in believing that a special election could be called and held without a statutory basis for doing so. As we said in *Files* v. *Hill*, 268 Ark. 106, 594 S.W.2d 836 (1988):

> The Board of Election Commissioners has no power to call or hold a new election and for the court to direct it to do so would be to confer a power that does not exist. See *McFarlin* v. *Kelly*, supra; *McCoy* v. *Story*, 243 Ark. 1, 417 S.W.2d 954; *Langston* v. *Johnson*, 255 Ark. 933, 504 S.W.2d 349. Furthermore, it is the function of the legislature, not the courts, to create rights of action, or provide relief where means of redress have not been designated. *McFarlin* v. *Kelly*, supra.

268 Ark. at 115, 594 S.W.2d at 841. We conclude that the circuit court erred in directing the Election Commission to hold a special election in this case.

▆▆ The election contest issue was not pursued further because the circuit court found that it could not determine a winner. But in an election contest, official election returns are considered *prima facie* correct and as the party contesting the election, Earngey bore the burden of offering proof to set aside the results of the election. Moreover, is well settled that there is a presumption that all votes cast at the election were lawful until their authenticity is impeached by affirmative evidence. *See Rogers* v. *Mason*, 246 Ark. 1, 436 S.W.2d 827 (1969); *Pogue* v. *Grubbs*, 230 Ark. 805, 327 S.W.2d 4 (1959); *Storey* v. *Johnson*, 182 Ark. 736, 32 S.W.2d 1068 (1930). Here, Earngey offered no

---

[1]We need not decide whether the McClung class could properly represent Louise Berry's interests because this issue was not decided below or raised on appeal.

proof to warrant overturning Louise Berry's election, and, in fact, the circuit court specifically found that Earngey failed to show that he had received a majority of the votes cast in his race against Louise Berry. The circuit court, therefore, was in error in setting aside the election result without supporting proof to do so.

In sum, the circuit court voided the election without the necessary proof to do so and then called a special election without the requisite statutory authority. Until proven otherwise, Louise Berry was the winner of the election. Because of her death between date of filing and the election, a vacancy in election now exists. *See* Ark. Code Ann. § 7-5-315(7) (Repl. 1993). From the record, we cannot ascertain whether an officer is currently holding over in that position. *See* Ark. Const. art 19, § 5. Nor can we determine whether the circumstances constitute a vacancy in the alderman's office to be filled by election of the city council. *See* Ark. Code Ann. § 14-44-104 (1987).

It is axiomatic that we refrain from addressing issues not raised on appeal. But because of these unique circumstances where the circuit court has acted outside of its statutory authority in directing that a special election be held and because of the public policy considerations inherent in the election of public officials, we reverse the order of the circuit court and remand for an order declaring a vacancy in the alderman's position and for additional proceedings as may be required. We repeat what we stated in *Rubens* v. *Hodges, supra.* We invite the General Assembly to consider legislation to govern future cases like this and the procedure to be followed for vacancies in election.

Reversed and remanded.