The Honorable Randy Minton State Representative 880 Minton Road Ward, AR 72176-8618
Dear Representative Minton:
I am writing in response to your request for my opinion on the following questions:
 1. How is a vacancy in the office of alderman in a city of the second class filled? Specifically, a member of a six member council resigned during his term, and the Mayor and Council have questioned the number of votes needed from the sitting council to successfully place a candidate into the vacancy. What is the proper method for an original six-member council to fill the vacancy of a departed alderman in a second class city?
 2. What are the veto powers and abilities of the Mayor with respect to the filling of a vacancy in an alderman's office? Can the Mayor veto the council's selection; and, if so, what is the proper procedure for the council to override the veto?
 3. In filling the vacancy of an alderman to serve for an unexpired term, does the electorate, or the council on behalf of the electorate, have the ability or right to request a special election?
 4. If there are five council members due to a vacancy on a six-member council, how can the city handle business if there is a 3-2 vote on most issues, if the Mayor does not go with the majority vote?
5. Can three council members of the five hire an attorney?
RESPONSE
With respect to your first question, by statute, the vacancy should be filled by vote of the council at the first regular meeting following the vacancy's occurrence. With respect to your second question, the mayor does have the power to veto the selection of an alderman, although the council can override the veto by 2/3 vote. With respect to your third question, I believe an alderman who has vacated his office can only be replaced for the unexpired term by action of the remaining aldermen, not by special popular election. With respect to your fourth question, the mayor may vote only when his vote is needed to pass an enactment or to establish a quorum. Since four votes are needed to enact any legislation other than the filling of the vacancy, which requires only three, the mayor is empowered to vote on an enactment only if he sides with the three-member majority. The answer to your fifth question is "no."
Question 1: How is a vacancy in the office of alderman in a city of thesecond class filled? Specifically, a member of a six member councilresigned during his term, and the Mayor and Council have questioned thenumber of votes needed from the sitting council to successfully place acandidate into the vacancy. What is the proper method for an originalsix-member council to fill the vacancy of a departed alderman in a secondclass city?
My immediate predecessor addressed this question in the enclosed Ark. Op. Att'y Gen. No. 97-265. I fully agree that the number of votes needed to fill the vacancy is three. The method for filling the vacancy is to conduct a vote of the aldermen at the first regular meeting after the occurrence of the vacancy. A.C.A. § 14-44-104.
Question 2: What are the veto powers and abilities of the Mayor withrespect to the filling of a vacancy in an alderman's office? Can theMayor veto the council's selection; and, if so, what is the properprocedure for the council to override the veto?
One of my predecessors addressed this question in the enclosed Ark. Op. Att'y Gen. No. 90-078. I concur that the mayor can veto the council's selection of an alderman — subject, of course, to the council's power to override the veto by a 2/3 vote of the whole membership, i.e., four votes. The procedures for effecting the veto and, possibly, the override, are set forth at A.C.A. § 14-44-107(b):
* * *
 (2)(A) In case of a veto, before the next regular meeting of the council, the mayor shall file in the office of the city recorder, to be laid before the meeting, a written statement of his reasons for so doing.
 (B) No ordinance, resolution, or order, or part thereof, vetoed by the mayor shall have any force or validity unless, after the written statement is laid before it, the council shall, by a vote of two-thirds (2/3) of all the aldermen elected thereto, pass it over the veto.
Notwithstanding my opinion on this matter, you should be aware that one circuit court has concluded that the mayor does not have veto power over a council's selection of a replacement alderman. Two of my predecessors discussed this ruling in the enclosed Ark. Ops. Att'y Gen. Nos. 90-166
and 91-078. For the reasons stated in these opinions, I agree with my predecessors that the circuit court's ruling, which has no precedential effect, was in error. No appellate court has yet found occasion to address this issue.
Question 3: In filling the vacancy of an alderman to serve for anunexpired term, does the electorate, or the council on behalf of theelectorate, have the ability or right to request a special election?
The only provisions in the Arkansas Code for a special election of aldermen relate to the election of the initial membership of a council following a change in the city's form of government. See A.C.A. §§14-38-113(3)(C)(i), 14-48-107 through -109. Sections 14-44-104 of the Code provides:
 Whenever a vacancy shall occur in the office of alderman in any city of the second class, at the first regular meeting after the occurrence of the vacancy, the city council shall proceed to elect, by a majority vote of the council, an alderman to serve for the unexpired term.
Although this statute might be read as dictating that a vacancy be filled by a vote constituting a majority of the entire number of alderman, subsequently enacted A.C.A. § 14-42-103(a) makes clear that the vote need only total a majority of the quorum of the whole:
 Vacancies in municipal offices which are authorized by state law to be filled by appointment by the city or town governing body shall require a majority vote of the remaining members of the governing body. However, there must always be a majority of a quorum of the whole number of the governing body to fill the vacancy.
In my opinion, given the legislature's express directives, any deviation from this formula would be inconsistent with state law and hence impermissible. See Phillips v. Earngey, 321 Ark. 476, 902 S.W.2d 782
(1995) (circuit court order directing special election for alderman held invalid); A.C.A. §§ 14-42-307 (cities can exercise only powers that are "not contrary" to state law); 14-54-101 (cities can exercise only powers that are "not inconsistent" with the general laws of the state);14-55-101 (cities can enact ordinances that are "not inconsistent with the laws of the state"); cf. A.C.A. § 14-43-401(b)(1) and (2) (dictating that a special election be called if a mayor's unexpired term exceeds six months).
Question 4: If there are five council members due to a vacancy on a sixmember council, how can the city handle business if there is a 3-2 voteon most issues, if the Mayor does not go with the majority vote?
Section 14-44-107(a) of the Code provides:
 The mayor in cities of the second class shall be ex officio president of the city council, shall preside at its meetings, and shall have a vote to establish a quorum of the council, or when the mayor's vote is needed to pass any ordinance, bylaw, resolution, order, or motion.
This statute must be read in conjunction with A.C.A. § 14-55-203(b), which provides:
 To pass any bylaw, ordinance, resolution, or order, a concurrence of a majority of a whole number of members elected to the council shall be required.
Under the latter of these statutes, four votes are needed to enact any measure on a six-member board. Under the former statute, the mayor can vote only if his vote is needed to enact a measure. Consequently, assuming a 3-2 split on the board, the mayor can vote only in support of the majority, thereby providing the crucial fourth vote. He cannot vote to effect a tie, and it would not matter even if he could, since four votes are required to take any action.
I appreciate the quandary in which the city finds itself. As discussed above, the three-member majority is strong enough to fill the vacancy but not strong enough to override a mayoral veto of the appointment. The only way out of this impasse would appear to be for at least one alderman or the mayor to realign his position.
Question 5: Can three council members of the five hire an attorney?
No. Either a fourth council member or the mayor would need to vote for this decision.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosures