Roy HELTON, Joann Smith, Chair, Phillips County Board of
Election Commissioners, Maxine Miller and Joe Howe, as
Members of the Phillips County Board of Election Commissioners
*v.* Arlanda JACOBS, Individually and on Behalf of the Voters of
Justice of the Peace District 7

01–125                                              57 S.W.3d 180

Supreme Court of Arkansas
Opinion delivered October 25, 2001

*Roscopf & Roscopf, P.A.*, by: *Charles B. Roscopf*, for appellant Roy Helton.

*L. Ashley Higgins, P.A.*, by: *L. Ashley Higgins*, for appellants Joann Smith, Maxine Miller, and Joe Howe.

*Wilson & Valley, Trial Lawyers*, by: *J.F. Valley, André K. Valley*, and *Don R. Etherly*, for appellee.

ROBERT L. BROWN, Justice. Pending before this court are two matters. First, there is the appeal of appellants Roy Helton (Helton) and the members of the Phillips County Board of Election Commissioners (Election Commission) from the order of the circuit court, granting appellee Arlanda Jacobs's petition for writ of *mandamus* and declaratory judgment and declaring the office of the Justice of the Peace, District 7, Phillips County, to be vacant. The petition by Jacobs was brought individually and on behalf of the voters of Justice of the Peace, District 7. Secondly, there is Jacobs's motion to dismiss the appeal on grounds that Helton's notice of appeal was untimely and the Election Commission lacked standing to appeal. We deny Jacobs's motion to dismiss. We reverse the order of the circuit court, and we remand with instructions to the circuit court.

In May 2000, Jacobs, Helton, and Doris Diane Tyler were all candidates for the position of Justice of the Peace, District 7, in Phillips County. On May 5, 2000, Jacobs petitioned the circuit court for a writ of *mandamus* coupled with a declaratory judgment to remove Tyler from the ballot because she was not a resident of District 7. A hearing on the petition was set for May 16, 2000, and on that date, Tyler counterclaimed that Jacobs was not qualified as a candidate because his filing fee check had been dishonored by the bank. On May 19, 2000, the circuit court entered findings of fact and conclusions of law as well as a separate order. The court concluded that both Jacobs and Tyler were ineligible as candidates for Justice of the Peace, District 7. The circuit court also ordered the Election Commission not to certify any votes cast for Jacobs or Tyler on election day, which was May 23, 2000. The court stated that there was no time to remove the disqualified candidates from the ballot.

Because the ballots for the primary election had been printed and the computer "chip" for tabulating votes had been programmed, the votes for Jacobs, Helton, and Tyler were counted following the May 23 primary election. The tabulated votes showed Jacobs receiving 234 votes; Helton receiving 162 votes; and Tyler receiving 82 votes. The Election Commission marked through the votes cast for Jacobs and Tyler in the election results submitted with its certification and certified Helton as the winner of the primary election.

On June 15, 2000, Denise Olloway and Jacobs petitioned for a writ of *mandamus* and declaratory judgment.[1] The petition requested that the circuit court direct the Election Commission to certify Jacobs as the winner of the May 23 primary election, or, alternatively, declare the position of Justice of the Peace, District 7, to be vacant. There was no prayer that the circuit court disqualify Helton as a candidate. The Election Commission answered and prayed that the court dismiss Jacobs's petition on the basis that the circuit court had found Jacobs was ineligible as a candidate and ordered that no votes were to be certified for him.

On October 5, 2000, this court affirmed the order of the circuit court which disqualified Jacobs as a candidate and which ordered that no May 23 votes for Jacobs were to be certified. *See Jacobs v. Yates*, 342 Ark. 243, 27 S.W.3d 734 (2000). In that case, we specifically held:

> In sum, we conclude that Jacobs's appeal is without merit and that the trial court correctly determined that any ballots cast for him in the primary election should not have been counted and certified by the election commission. The trial court is affirmed and the mandate is ordered issued within five days unless a petition for rehearing is filed.

*Jacobs*, 342 Ark. at 255, 27 S.W.3d at 742. On October 20, 2000, Helton moved to dismiss Jacobs's petition under Ark. R. Civ. P. 12(b)(6) and (8) because of this court's decision in *Jacobs v. Yates, supra*. The Election Commission later amended its answer to assert that the grounds set forth in Jacobs's petition were decided in *Jacobs v. Yates, supra*. Helton also amended his answer to assert *res judicata* as an affirmative defense. On November 7, 2000, Helton was listed as an unopposed candidate for Justice of the Peace, District 7, on the general election ballot and was subsequently certified as the winner after the election.

On November 16, 2000, Jacobs's petition was heard before the circuit court. Based on a stipulation of the parties, Jacobs's only prayer for relief submitted to the circuit court was that the position of Justice of the Peace, District 7, be declared vacant pursuant to Ark. Code Ann. § 7-5-315 (Repl. 2000), and filled in accordance with law. On December 29, 2000, the circuit court entered its

---

[1] After the petition was filed, Olloway moved to have her name removed from the style of the case and to dismiss the action with respect to her interests.

order declaring a vacancy in nomination in the position of Justice of the Peace, District 7, and voiding the certificate of election granted to Helton.[2] The order further provided that Jacobs, as the incumbent Justice of the Peace, would continue as a "holdover" in the office until the vacancy was filled. The order also denied Helton's motion to dismiss and, by implication, the prayer for dismissal made by the Election Commission. In its order, the circuit court noted that the will of the people should be the guiding principle in election cases and that Jacobs had received the highest percentage of the votes cast on May 23. The court went on to observe that votes are counted for persons who withdraw from a race or die after certification of the ballot or after the filing period has ended under Ark. Code Ann. § 7-5-315 (7)(A) (Repl. 2000), and that this results in a vacancy in nomination. The court then equated Jacobs's disqualification before the May 23 primary election to death or withdrawal under the statute and, thus, concluded that a vacancy in nomination had resulted.

Helton and the Election Commission filed the appeal which is before this court today. On January 18, 2001, Jacobs moved to dismiss the appeals of both appellants on separate grounds.

## I. Jacobs's Motion to Dismiss

■ We first address Jacobs's motion to dismiss the appeals of Helton and the Election Commission. The motion is premised on Jacobs's conclusion that his June 15, 2000 petition was an election contest. Because we do not agree that Jacobs's petition was one contesting the election results between two candidates or that the circuit court's order resolved an election contest, we deny the motion.

■■ As an initial point, we again observe that Jacobs never disputed the eligibility or qualifications of Helton to stand as a candidate for Justice of the Peace, District 7. Jacobs's eligibility as a candidate, however, was challenged pre-election by Tyler, and the circuit court agreed that he was disqualified and ordered that any votes cast for him should not be certified. The procedure followed by Tyler for Jacobs's removal from the ballot was a petition for writ of *mandamus* and declaratory judgment, which is the procedure this

---

[2] Judge Harvey L. Yates served as circuit judge for the circuit court until October 27, 2000, when he recused. Judge L.T. Simes, II, then became the circuit judge for the case.

court endorsed in *State v. Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989), for pre-election attacks on a candidate's eligibility to stand for election and for removal of that ineligible candidate's name from the ballot. *See* Ark. Code Ann. § 7-5-207(b) (Repl. 2000). *See also Tittle v. Woodruff*, 322 Ark. 153, 907 S.W.2d 734 (1995). Upon removal, that person is no longer a candidate. An election contest, on the other hand, is a right of action "conferred on any *candidate* to contest the certification of nomination or the certificate of vote as made by the appropriate officials in any election." Ark. Code Ann. § 7-5-801(a) (Repl. 2000) (emphasis added). It is a "post-election contest between two competing candidates." *Jacobs v. Yates*, 342 Ark. at 250, 27 S.W.3d at 738. *See also Rubens v. Hodges*, 310 Ark. 451, 837 S.W.2d 465 (1992); *McClendon v. McKeown*, 230 Ark. 521, 323 S.W.2d 542 (1959).

■ What is undisputed in this case is that Jacobs was disqualified as a candidate before the election. Thus, he could not contest the election results *as a candidate*, as required by § 7-5-801(a). Because Jacobs's cause of action was not an election contest, the seven-day limit for a party to appeal an order set out in Ark. Code Ann. § 7-5-810 (Repl. 2000), does not apply. We hold that Helton had thirty days to file his notice of appeal and that it was timely. *See* Ark. R. App. P.—Civ. 4(a).

■ Jacobs moves that the Election Commission has no right to pursue this appeal for different reasons. He asserts that the Election Commission, as a nominal party, has no standing to appeal and, further, that it failed to make financial arrangements with the court reporter to prepare the record. We address the financial arrangements point first. Both Helton and the Election Commission stated in their notices of appeal that no financial arrangements had been made with the court reporter yet, but that they both were willing to pay up to fifty percent of the transcript costs in accordance with Ark. Code Ann. § 16-13-510(c) (Repl. 1999). Attached to Helton's response to the motion to dismiss was a copy of a letter dated January 5, 2001, from Helton's counsel to the court reporter ordering the record, along with a copy of a check for $100, as a deposit. Furthermore, we note that the record was timely filed by the appellants. Failure to include financial arrangements language in a notice of appeal no longer renders that notice invalid. *In Re: Rule 3, Rules of Appellate Procedure—Civil*, 336 Ark. 645 (1999). Under these circumstances, we determine that there has been substantial compliance with Ark. R. App. P.—Civ. 3(e). *See Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996). We hold that there is no

basis for dismissing the Election Commission's appeal for lack of financial arrangements.

■ With respect to the standing of the Election Commission to appeal, we hold that standing was indeed present. We said in *Jacobs v. Yates, supra,* that the Election Commission had standing to question the qualifications of candidates. Clearly, the issue of candidate qualifications falls within the Election Commission's duty to assure proper and lawful elections. The same holds true with regard to the Election Commission's duty to uphold a valid election. In *Rubens v. Hodges, supra,* this court distinguished the Election Commission's nominal role in an election contest between adversarial candidates and its role in an action seeking to void an election. In the latter case, we said the Election Commission's function "is to promote fair elections." *Rubens,* 310 Ark. at 454, 837 S.W.2d at 467. *See also Phillips v. Earngey,* 321 Ark. 476, 902 S.W.2d 782 (1995). That function extends to appealing perceived error by a circuit court in voiding a valid election.

■ As a final observation on this point, Jacobs urges that both Helton and the Election Commission admitted in their answers that the action brought by Jacobs was a civil action filed pursuant to Ark. Code Ann. §§ 7-5-801, *et seq.,* which is the Election Contest Subchapter. We do not read the appellants' answers as waiving their rights to contend that this was not an election contest. Rather, we read their answers as admitting that that is how Jacobs had couched his petition. This argument has no merit.

Accordingly, Jacobs's motion to dismiss is denied.

## II. Voiding the Election

We turn next to the appellants' arguments that the circuit court erred in voiding Helton's certification as the winner and declaring a vacancy· in nomination. Multiple arguments are presented by Helton and the Election Commission on this point. We consider the prevailing argument, however, to be that the circuit court in its May 19, 2000 order directed that no votes be certified for Jacobs. The court noted that it was too late to remove Jacobs's name from the ballot, but clearly the order intended that any votes cast for Jacobs were to be of no effect and were not to be counted. We affirmed that decision in *Jacobs v. Yates, supra.* In accordance with the circuit court's directive, the Election Commission marked

through the tabulated votes for Jacobs in its certification of the election results.

■ Despite this history, all of Jacobs's arguments made before the circuit court in connection with his June 15, 2000 petition and now before this court on appeal flow from his assertion that he received a majority of votes cast. That is a faulty premise because any votes cast for Jacobs in the May 23 primary election should not have been counted. No one disputes the disqualification of Jacobs and Tyler. Indeed, the parties stipulated to that fact in the case before us. Moreover, state law is clear that the names of ineligible candidates shall not be printed on the ballot. *See* Ark. Code Ann. § 7-5-207(b) (Repl. 2000). We are hard pressed, as a result, to give any credence to vote tallies that should not have been done in the first place. Were we to do so, we would be reversing our decision in *Jacobs v. Yates, supra*, where we explicitly said the votes should not be counted. In sum, Jacobs's total vote is irrelevant and of no effect, and since his arguments all hinge on his contention that he received most of the votes cast, he cannot prevail.

■ It is also important to focus in this case on the relief requested by Jacobs in his June 15, 2000 petition for writ of *mandamus* and declaratory relief. He did not contend that Helton should be declared ineligible or disqualified before the November 7, 2000 general election. Thus, Jacobs did not invoke the procedure for determining candidate eligibility under *State v. Craighead County Bd. of Election Comm'rs, supra*. On the contrary, he stipulated that his sole prayer for relief was to have the position of Justice of the Peace, District 7, declared vacant under § 7-5-315(7) and to be filled according to law. Section 7-5-315(7) reads:

(7)(A) The votes received by any person whose name appeared on the ballot and who *withdrew or died* after the certification of the ballot or filing period ended shall be counted.

(B)(i) If the person received enough votes to win nomination or election, a vacancy in the nomination or election shall be declared.

(ii)(a) If the person received enough votes to qualify for a runoff, the person's name shall appear on the runoff ballot; and

(b) If enough votes are cast for the person to win the runoff, then a vacancy in the nomination or election shall exist.

Ark. Code Ann. § 7-5-315(7) (Repl. 2000) (emphasis added). Thus, § 7-5-315(7), by its terms, applies only to cases in which a person dies or withdraws after certification of the ballot or after the filing period ends. It is not applicable to a case such as we have before us where a candidate has been disqualified before the primary election. Even if we accepted Jacobs's argument, which we do not, § 7-5-315(7) determines a vacancy in nomination by counting votes. Again, in this case the votes cast for Jacobs are of no effect.

In its opinion, the circuit court relied on the case of *Swepston v. Barton*, 39 Ark. 549 (1882), in declaring a vacancy in nomination. The court specifically quoted from *Swepston* that "when a vote for an ineligible candidate is not declared void by statute, the vote she receives, if they are a majority or plurality, will be effectual to prevent the opposing candidate being chosen, and the election must be considered as having failed." 39 Ark. at 555. *See also Davis v. Holt*, 304 Ark. 619, 804 S.W.2d 362 (1991). In *Swepston*, Swepston defeated Barton for the office of Crittenden County Sheriff by a majority of 165 votes at the general election. Thereafter, as part of the election contest, Barton contended that Swepston was ineligible because he had failed to account for or pay over certain revenues he collected for the county. This court did not decide Swepston's eligibility because there was no ruling on that point by the circuit court.

We deem *Swepston* to be inapposite as precedent for this case for one critical reason. In *Swepston*, the ineligibility was asserted *after the election* in which Swepston had been a candidate and received a majority of the votes cast. In the case at hand, Jacobs was declared ineligible and disqualified as a candidate *before* the election took place and should not even have been on the ballot. This court has consistently drawn a clear distinction between causes of action that accrue pre-election and those that accrue post-election after the voters have spoken. *See, e.g., Doty v. Bettis*, 329 Ark. 120, 947 S.W.2d 743 (1997) (prior to election, election laws are mandatory; thereafter, they are directory only).

There is, finally, the point that Jacobs did not press for resolution of his petition for writ of *mandamus* and declaratory relief regarding a vacancy in nomination before the November 7 general election. As an unopposed candidate, Helton was assured of being certified the winner of the general election under state law. *See* Ark. Code Ann. § 7-5-315(1) (Repl. 2000). After the general election occurred and Helton was certified the winner, a declaration of a

vacancy *in nomination* was not the appropriate remedy. The circuit court clearly erred in declaring a vacancy in nomination to exist.

We reverse the order of the circuit court and remand this case with the following instructions: (1) Arlanda Jacobs shall immediately cease holding the office of Justice of the Peace, District 7; (2) the order of the circuit court voiding the certificate of election granted to Roy Helton is reversed, effective immediately, and the certificate of election granted to Roy Helton is in full force and effect; and (3) Roy Helton shall immediately begin serving his term as Justice of the Peace, District 7.

Reversed and remanded.