The Honorable Robert S. Moore, Jr. State Representative Post Office Box 446 Arkansas City, Arkansas 71630-0446
Dear Representative Moore:
I am writing in response to your request for an opinion regarding vacancies in the election process. You pose three specific questions and ask that I address the "elections laws that apply to a ballot where one candidate dies before the preferential primary election, but after the ballot has been certified." Your three questions are as follows:
 1. According to Ark. Code Ann. § 7-5-315(7)(B)(i), if a candidate dies during this time, and receives enough votes to win nomination or election, a vacancy in nomination or election shall be declared. According to Ark. Code Ann. 7-7-104 §§ (c) and (d), the party must notify the Governor within five days after the date of death or lose the opportunity to fill the vacancy. However, a vacancy in nomination cannot be declared until after the primary election which may be well over 5 days after the candidate has died. What is the procedure for a contested primary election contest when one of the candidates dies at least 5 days before the election?
 2. Arkansas Code Ann. § 7-5-315 also states: "In counting the paper ballots at the polling site, the following procedures shall be followed. . . ." Does this language control paper ballots only, or electronic ballots as well? *Page 2 
 3. Does it matter if the deceased candidate is the incumbent county office holder, in light of your analysis in Ark. Ag. Op. 06-217?
RESPONSE
In response to your first question, in my opinion the state committee of the political party must notify the Governor of its choice of method to fill the vacancy in nomination within five days after the vote is certified showing that the deceased candidate is the winner of the primary election. In response to your second question, in my opinion the language of A.C.A. § 7-5-315(1) through (6) has reference largely to paper ballots. In my opinion, however, a court faced with the question would not interpret the "paper ballots" reference in the introductory language of A.C.A. § 7-5-315 as restricting the application of subsection (7), which involves counting the votes of persons who withdraw or die after the ballot is certified. In my opinion, subsection (7) applies to require the counting of votes for a deceased candidate no matter what type of voting system is in place. I am somewhat uncertain as to the focus of your third question, but in my opinion, the conclusions above are not altered if the deceased candidate is the incumbent. Opinion 2006-217 is not relevant in this instance, as it did not involve a vacancy in nomination.
Question 1 — What is the procedure for a contested primary electioncontest when one of the candidates dies at least 5 days before theelection?
As an initial matter, it is necessary to set out the applicable statutes controlling your question. A.C.A. § 7-5-315(7) provides in pertinent part as follows:
 (7)(A) The votes received by any person whose name appeared on the ballot and who withdrew or died after the certification of the ballot or filing period ended shall be counted.
 (B)(i) If the person received enough votes to win nomination or election, a vacancy in the nomination or election shall be declared.
 (ii)(a) If the person received enough votes to qualify for a runoff, the person's name shall appear on the runoff ballot. *Page 3 
 (b) If enough votes are cast for the person to win the runoff, then a vacancy in the nomination or election shall exist.
A "vacancy in nomination" is defined at A.C.A. § 7-1-101(25) as follows:
 (25) "Vacancy in nomination" means the circumstances in which the person who received the majority of votes at the preferential primary election or general primary election cannot accept the nomination due to death or notifies the party that he or she will not accept the nomination due to serious illness, moving out of the area from which the person was elected as the party's nominee, or filing for another office preceding the final date for certification of nominations. . . .
Section 7-7-104 controls the procedure for filling a vacancy in nomination. It provides in pertinent part that:
 (a) Nominees of a political party to fill a vacancy in nomination, as defined in § 7-1-101, shall be declared by:
 (1) Certificate of the chair and secretary of any convention of delegates held within twenty-five (25) days of the Governor's letter certifying vacancy; or
 (2)(A) A special primary election called, held, and conducted in accordance with the rules of the party.
 * * * (c) When a vacancy in nomination occurs as a result of death or when the person who received the majority of votes cast at the preferential primary election or the general primary election notifies the state committee of the political party of his or her intent to refuse nomination due to serious illness, moving out of the area from which elected as the party's nominee, or filing for another office, the state committee of the political party shall notify the Governor within five (5) days after the date of death or *Page 4 
the date the party was notified of intent to refuse nomination as to whether the party chooses to fill the vacancy in nomination at a special election or a convention.
 (d) If the party fails to notify the Governor within the five-day period, the vacancy in nomination shall not be filled nor shall the vacancy in nomination be filled if it occurred for any reason other than death, serious illness, the candidate's moving out of the area from which elected as the party's nominee, or filing for another office.
(Emphasis added.)
Section 7-7-104(c) states that "When a vacancy in nominationoccurs as a result of death . . . the state committee of the politicalparty shall notify the Governor within five (5) days after the date ofdeath . . . as to whether the party chooses to fill the vacancy in nomination at a special election or a convention." (Emphasis added). Obviously, if the death of a candidate occurs more than five daysbefore the preferential primary election, and if the deceased candidatehas an opponent or opponents in the primary election, it is impossible to know at the time of death, or within five days thereof, whether a vacancy in nomination yet exists. One of the other surviving candidates may win the primary election and be the nominee, thus obviating any "vacancy in nomination." It is clear that the votes for the deceased candidate are to be counted, however (A.C.A. § 7-5-315(7)), even where the death occurs before the primary election. See A.C.A. § 7-5-315(7)(A) (requiring counting of the votes for a candidate who died "after the certification of the ballot or filing period ended. . ."). See alsoHelton v. Jacobs, 346 Ark. 344, 57 S.W.3d 180 (2001). If a deceased candidate who died before the primary election receives the highest number of votes at the primary election (or at an ensuing runoff), a vacancy in nomination will exist at that time. Thus, although A.C.A. § 7-7-104 speaks in terms of notifying the Governor "within five (5) days after the date of death," this language cannot control where the death occurs more than five days prior to the preferential primary election and where the primary is contested. The notification requirement, in my opinion, attaches only "[w]hen a vacancy in nomination occurs. . . ." A.C.A. § 7-7-104(c). No vacancy in nomination occurs unless and until the deceased candidate defeats his challengers in the primary election. As a consequence, in my opinion, the procedure in such instance is for the state committee of the political party to notify the Governor of its choice *Page 5 
within five days after the vote is certified showing that the deceased candidate is the winner of the primary election. See A.C.A. § 7-7-309
(Supp. 2007) (requiring the county board of election commissioners to certify the result not sooner than forty-eight (48) hours and not later than ten (10) days after the primary).
Question 2 — Arkansas Code Ann. § 7-5-315 also states: "In countingthe paper ballots at the polling site, the following procedures shall befollowed. . . ." Does this language control paper ballots only, orelectronic ballots as well?
I assume your question is whether subsection (7) of A.C.A. § 7-5-315, addressing the counting of votes for a deceased candidate, is impacted by the introductory language of the statute, which refers to "paper ballots." Although I am somewhat uncertain as to your precise question in this regard, in my opinion subsection (7) of A.C.A. § 7-5-315 applies to require the counting of votes for deceased candidates no matter what type of voting system is in use.
It will be helpful to set out the provisions of A.C.A. § 7-5-315 more fully in order to analyze this question:
 7-5-315. Counting paper ballots at the polling site.
 In counting the paper ballots at the polling site, the following procedures shall be followed:
 (1) The votes received by an unopposed candidate in any election held in this state shall not be counted or tabulated by the election officials. The word "UNOPPOS ED" shall be sufficient to insert on the tally sheet to indicate that the candidate has received a majority of the votes cast in the election. However, the votes received by an unopposed candidate for the office of mayor or circuit clerk shall be counted and tabulated by the election officials;
 (2) No write-in vote in any election in this state may be counted unless the name of the write-in candidate shall have been handwritten on the ballot; *Page 6 
 (3) In counting the ballots, the ballot box shall be opened, and the ballots shall be counted by counting each ballot in turn or by counting by offices and issues. The election officials must witness the counting of the ballots and shall keep separate tally lists of the votes cast for each candidate or issue on the ballot;
 (4) When two (2) or more ballots are found folded together, it shall be considered as conclusive evidence of their being fraudulent, and neither of them shall be counted. If a ballot shall be found to contain marks for more than the maximum allowable number of candidates in any one (1) contest, the contest shall be considered overvoted, and it shall be the responsibility of the election officials to determine the voter's intent;
 (5) Upon the close of the polls, the election officials shall immediately certify and attest the list of voters and continue the count to completion. If any of the election officials become sick or incapacitated from any other cause, the remaining election officials shall continue the count until it is completed;
 (6) After the count is completed, the election officials shall make out the certificates of election in triplicate and immediately post one (1) copy outside the polling site; and
 (7)(A) The votes received by any person whose name appeared on the ballot and who withdrew or died after the certification of the ballot or filing period ended shall be counted.
 (B)(i) If the person received enough votes to win nomination or election, a vacancy in the nomination or election shall be declared.
 (ii)(a) If the person received enough votes to qualify for a runoff, the person's name shall appear on the runoff ballot.
 (b) If enough votes are cast for the person to win the runoff, then a vacancy in the nomination or election shall exist. *Page 7 
Subsections (1) through (6) above, which were largely adopted as part ofAct 465 of 1965, clearly refer to the procedure for manual counting ofpaper ballots. References to things such as "tally sheets" and ballots being "folded together" make this clear. Subsection 7, addressing the counting of votes for deceased candidates and candidates who withdraw, was added later, as a result of Act 530 of 1991. That act was entitled "A N ACT to Provide for the Counting of Votes Cast for a Person Whose Name Appeared On the Ballot But Who Withdrew or Died; and for Other Purposes." It does not as clearly lend itself to paper ballots alone, but appears to address the counting of all ballots, whether by hand, or by voting machine or electronic device. In fact, the statute above did not expressly refer to "paper ballots" until passage ofAct 1020 of 2007, which was a lengthy multipurpose act entitled "AN ACT to Amend Various Sections of the Arkansas Code Pertaining to Elections." That 2007 act inserted the word "paper" in the title and introductory language of A.C.A. § 7-5-315.
Your question is presumably whether subsection (7) of A.C.A. § 7-5-315
is restricted to the counting of paper ballots. If so, this would mean that votes for a deceased candidate would be counted in counties or areas using paper ballots, but not in those areas using voting machines or electronic voting systems. I cannot conclude that this was the legislative intent. Statutes will not be interpreted in a way that would bring about an absurd or unworkable result. See, e.g., Griffen v.Arkansas Judicial Discipline and Disability Commission, 355 Ark. 38,130 S.W.3d 524 (2003); and Citizens to Establish a Reform Party v.Priest, 325 Ark. 257, 264-65, 926 S.W.2d 432, 436 (1996). It would be absurd in my opinion, particularly in a statewide or multi-county race, to count votes cast for a deceased candidate only in areas using paper ballots. I can envision no rationale supporting such an interpretation of the statute.
In addition, two provisions of law addressing voting machines and electronic voting systems, respectively, render applicable any provisions of law applicable to other methods of voting insofar as they are applicable and not inconsistent with the voting method in use. In this regard, A.C.A. § 7-5-502 (Repl. 2000), found in the subchapter addressing voting machines, provides that:
 All laws of this state applicable to elections where voting is done in any manner other than by machines and all penalties prescribed for violation of these laws shall apply to elections and precincts where voting machines are used insofar as they are applicable. *Page 8 
Similarly, A.C.A. § 7-5-604(b) (Supp. 2007), regarding electronic vote tabulating devices, provides that:
 (b) So far as applicable, the procedures provided by law for voting by other means and the conduct of the election in regard thereto by the election officials, not otherwise inconsistent with this subchapter, shall apply to the system of electronic vote tabulation as authorized in this subchapter.
In my opinion, subsection (7) of A.C.A. § 7-5-315, regarding the counting of votes for deceased candidates, is also applicable to counties or areas using voting machines or electronic voting systems. In my opinion the intention of that subsection of A.C.A. § 7-5-315 is not restricted to paper ballots and in my opinion is made applicable to other systems of voting by the statutes set out above.
Question 3 — Does it matter if the deceased candidate is the incumbentcounty office holder, in light of your analysis in Ark. Ag. Op.06-217?
I am somewhat uncertain as to the focus of this question. In my opinion, however, votes cast for a deceased candidate at a primary election are counted pursuant to A.C.A. § 7-5-315(7) whether or not the deceased candidate is the incumbent. In addition, A.C.A. § 7-5-315
requires, if the deceased candidate wins the primary election, that a vacancy in nomination be declared. A.C.A. § 7-5-315(7)(B)(i). If the political party follows the applicable deadlines, it is authorized to fill the vacancy in nomination. Your reference to Op. Att'y Gen.2006-217 is misplaced, in my opinion, because that opinion did not involve the existence or the filling of a vacancy in nomination. That opinion, which was issued in December 2006, after the November general election, involved a vacancy in the office of alderman, due to the incumbent alderman's death after the deadline for filing nominating petitions, but before the contested municipal election. After the alderman's death, a person was appointed to fill out the alderman's term of office, pending the election of a new alderman for the ensuing term, which was to begin January 1st. The incumbent alderman, however, although deceased, received the majority of votes cast at the municipal election. Thus, no one was elected to take office on January 1. The question presented was whether the person appointed to fill the vacancy in the office, pending the election, should hold over and also complete the upcoming term beginning January 1st, or whether there was some other method for *Page 9 
filling the vacancy in the office. The conclusion was that the appointee should continue to serve through the upcoming term.
This opinion obviously did not involve the filling of a vacancy in nomination. It addressed instead a vacancy in the office of alderman. An opinion perhaps more relevant to your question is Op. Att'y Gen.2004-308, which concluded that the "vacancy in nomination" procedure was available, although apparently not utilized, after the death of an incumbent quorum court member after he had won the primary election. It was concluded in Op. Att'y Gen. 2004-308, that if "such measures had been taken [if the vacancy in nomination had been filled] . . . the person appointed by the Governor [to fill the vacancy in the office] would serve through only the unexpired term and the person selected or elected to fill the vacancy in nomination, because unopposed in the general election, would serve during the upcoming term beginning January 1, 2005." Obviously, therefore, the existence and filling of a vacancy in nomination would lead to a different result than the one reached in Op. Att'y Gen. 2006-217. I will refer you to Op. Att'y Gen. 2004-308 for any further questions in this regard.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General *Page 1