Robert E. HILL *v.* Carl CARTER, Crittenden County Election Commission, and Crittenden County Democratic Party

03-1304                                            184 S.W.3d 431

Supreme Court of Arkansas
Opinion delivered June 3, 2004

*Wilson & Associates, P.A.*, by: *Ronald C. Wilson*, for appellant.

*Richard West*, for appellee Carl Carter.

*Joe M. Rogers*, for appellee Crittenden County Election Commission.

*Brian Williams*, for appellee Crittenden County Democratic Party.

ROBERT L. BROWN, Justice. This is an appeal from an order of the circuit court dismissing appellant Robert Hill's complaint against appellees Carl Carter, the Crittenden County Election Commission, and the Crittenden County Democratic Party of Arkansas with prejudice. We affirm the circuit court's order.

At the time relevant to this case, Hill lived in Crittenden County and desired to run for the Mississippi Township position on the Democratic Central Committee (Central Committee) in Crittenden County. The Central Committee is the body authorized to conduct Democratic Party primary elections in Crittenden County. Carl Carter is a resident of Crittenden County, who also wished to run for the Mississippi Township position on the Central Committee.

In Crittenden County, the city of West Memphis is divided into five wards for voting purposes. Each ward has one member elected to the Central Committee. A separate member of the Central Committee is elected from the Mississippi Country Box precinct in Mississippi Township. On February 1, 1998, part of the Mississippi Township known as Shady Grove was annexed by West Memphis, but the Mississippi Township position still existed for the balance of the Township for purposes of the Central Committee. Hill lived in Shady Grove in Marion and was registered to vote in Ward 1 in West Memphis, where he voted in 2000 and 2002. Carter lived in close proximity to Hill in Marion in the unincorporated area of Mississippi Township. He is registered to vote in the Mississippi Country Box precinct.

On March 29, 2002, Hill signed the Political Practice Pledge for the Democratic Party and the 2002 County Committee Filing Form, on which he stated that he voted in the "Mississippi" voting precinct. Hill also paid the $20 filing fee. After these actions were taken by Hill, Cy Bond, Secretary of the Democratic Party in Crittenden County, certified in writing on March 29, 2002, on behalf of the Democratic Party of Arkansas, that Hill had completed all necessary requirements to file as a candidate for the office of Democratic Central Committee — Mississippi Township in the primary election to be held on May 21, 2002.

On April 9, 2002, Bond undertook an investigation to determine the eligibility of Hill to qualify as a candidate for the Central Committee position. Bond's investigation was not instigated by Carter, according to the circuit court's order. On April 10, 2002, Bond sent a letter to the Crittenden County Clerk

stating that Hill was ineligible to run for the Mississippi Township position, because his "place of residence is Ward 1 in West Memphis." Also on April 10, the Crittenden County Election Commission (Election Commission), comprised of three commissioners, met to draw for the ballot positions for races to be held in the May 21, 2002 primary election. The Election Commission's secretary at the time, Barbara Dodge, struck through Hill's name after the County Clerk's office informed the Election Commission that it had been informed by Bond that Hill was ineligible to run for this position.

On April 11, 2002, the County Clerk sent Bond a letter stating that Hill was registered at 324 Lincoln Road in Marion, which was "now located in Ward 1 of West Memphis." The Clerk also stated in that letter that Shady Grove had been annexed by West Memphis on February 1, 1998, and that Hill was notified of the ward change.

On April 12, 2002, Reginald Robertson, Chairman of the Central Committee, telephoned Hill and asked him if he had requested that his name be removed from the ballot. Hill responded that he had made no such request and that he would go to the County Clerk's office to determine what had happened. When he did so that same day, the County Clerk told Hill that she had received a letter from Bond, which stated that Hill was ineligible to run for the Mississippi Township position, because Hill lived in Shady Grove, and Shady Grove had been annexed by West Memphis. The Clerk gave Hill a copy of Bond's April 10, 2002 letter. Hill attempted to talk with Bond that afternoon, but Bond's office was closed. On May 6, 2002, Reginald Robertson sent a letter to the Election Commission requesting that Hill's name be placed on the ballot. No action was taken. The election took place on May 21, 2002, without Hill's name on the ballot.

On May 24, 2002, Hill filed his complaint against the appellees and asserted that he was denied due process by not having had an opportunity to be heard before he was deprived of his right to run for the Central Committee position. He further asserted that he was denied equal protection under the law, because Carter's name was not removed even though his residential location was almost identical to Hill's. Hill prayed that a special election be held for the Mississippi Township position on the Central Committee, that the certification of the May 2002 primary election be stayed, pending the outcome of the special election, and that the Central Committee and its officers be restrained from

removing candidates from the ballot without complying with notice or hearing requirements. On June 14, 2002, Carter moved to dismiss Hill's complaint for failure to state facts upon which relief could be granted.

On June 23, 2003, the circuit court held a non-jury trial on Hill's complaint and Carter's motion. Hill testified that he took no further legal action after he found out that his name was removed from the ballot, because he had contacted Reginald Robertson, who Hill expected would get his name back on the ballot. Hill testified that he did not discover that his name was not on the ballot until election day on May 21, 2002.

On August 18, 2003, the circuit court issued its letter opinion in which it concluded that Hill's complaint should be dismissed with prejudice. Later, the court signed an order dismissing Hill's complaint. In its order, the court stated that it was dismissing Hill's complaint for failure to exhaust his remedies under the Democratic Party Rules.

## I. Party Remedies

Hill initially contends that the circuit court erroneously concluded that he had to exhaust his remedies under the Democratic Party Rules, because Ark. Code Ann. § 7-5-801 — 7-5-810 (Repl. 2000), does not require a candidate to exhaust such remedies before filing suit. He further claims that this court should not entertain Carter's arguments (1) that Hill was not a "candidate" for purposes of an election-contest proceeding, (2) that Hill did not file his complaint in a timely manner, and (3) that Hill failed to state a cause of action under the election-contest statute (§ 7-5-801), because Carter failed to raise these arguments before the circuit court. He adds that even if Carter had raised the issue of whether Hill was a "candidate," he was a candidate under Arkansas law. Finally, Hill claims that Ark. Code Ann. § 7-5-804(d) supersedes any political party rule and that a political party's rules are subject to judicial interpretation.

We begin by reference to the Political Parties Chapter of the Election Code. With respect to the responsibilities of political parties, the Code reads:

> Subject to the provisions of this act and other applicable laws of this state, organized political parties shall:

> * * * * *

(3) Establish rules and procedures for their own organization.

Ark. Code Ann. § 7-3-101 (Repl. 2000). A second Code section reads: "Each political party shall be responsible for determining the qualifications of candidates seeking nomination by the political party, provide necessary applications for candidacy, accept and process the applications, and determine the order of its ballot." Ark. Code Ann. § 7-7-201(b)(5) (Supp. 2001).

The Democratic Party of Arkansas issued its Rules for 2000-2002. In its order, the circuit court made reference to the following Rules as relevant to this case:

9. Rule 19(a) provided:

County Committees shall have original jurisdiction of contests or protests involving the election and qualifications of members and officers of said county committees, and candidates for municipal and county offices.

10. Rule 19(b) provided, in part:

The State Executive Committee shall hear and determine appeals of any aggrieved person or persons arising from appeals from a County Committee or arising from other acts or omissions of the Democratic Party or any of its subsidiary bodies, resulting from the application or enforcement of Rules.

11. Rule 20(a) provided, in part:

Notice of a contest, protest, appeal or grievance shall be in writing and shall be served by mail or hand-delivered to the Chair of the County Committee within 10 days of the act or omission complained of by the aggrieved person(s).

12. Rule 21(a) provided, in part:

The County Chair shall give notice to all committee members and the aggrieved party of a hearing that shall be held as soon as reasonable but no more that twenty-one (21) days from the date the County Chair received the notice of grievance, unless otherwise agreed by the aggrieved party and the County Chair. Hearings on grievances concerning elections and election procedures or related matters should be expedited.

Rule 29(b) of those rules provides that Central Committee members shall be residents of the the political subdivisions that they represent in the county and shall be elected by the Democratic voters in such subdivisions. Rule 36(f) provides that after a person has submitted his pledge and filing fee, the secretary of the appropriate party committee shall notify the candidate within ten days after the close of the filing period if he or she is not qualified for the party primary ballot.

Hill relies in this appeal on that part of the Election Code that provides a "candidate" the right to contest the certification of nomination or the certificate of vote made by the appropriate officials in any election. Ark. Code Ann. § 7-5-801(a) (Repl. 2000). The Election Code further provides that the proceedings under §§ 7-5-801 — 7-5-810 are the only proceedings to follow concerning contests before political conventions or committees. *See* Ark. Code Ann. § 7-5-804(d) (Repl. 2000).

Recently, this court dealt with a situation where two people who wanted to run for Justice of the Peace in Phillips County were deemed ineligible before the election. *See Helton v. Jacobs*, 346 Ark. 344, 57 S.W.3d 180 (2001). We observed in *Helton* that filing a petition for a writ of *mandamus* and declaratory judgment, which this court endorsed in *State v. Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989), was the proper procedure to be used for a pre-election attack on a candidate's eligibility to stand for election and for removal of that ineligible candidate's name from the ballot. This court went on to state that after a person's name is removed from the ballot, pre-election, he is no longer a "candidate" for purposes of mounting an election contest. *Id.*

In the case before us, the circuit court dismissed Hill's complaint with prejudice, because he failed to exhaust his remedies under the Democratic Party Rules and specifically under Rules 19(a), 19(b), 20(a), and 21(a). The court relied on Ark. Code Ann. § 7-7-201(b)(5) (Repl. 2000), which states that each political party is responsible for determining the qualifications of candidates seeking nomination by that political party. That reasoning of the court might have controlled before Hill was certified as completing the steps to file as a candidate for the position in writing by the Democratic Party. However, Hill's name was struck from the ballot after certification by the Democratic Party but pre-election. Under those facts, Hill could not sit idly by and fail to take action to protect his rights.

■ The question then becomes what action should Hill have taken? This court has made it abundantly clear that when contesting an eligibility determination pre-election, a judicial remedy is the proper route to take. *See, e.g., Helton v. Jacobs, supra; State v. Craighead County Bd. of Election Comm'rs, supra.* In *Craighead County*, a citizen challenged the eligibility of three candidates for Justice of the Peace after their names had been certified to the Election Board by the Democratic Party. The citizen did so on the basis that two of the candidates failed the residency requirement and the other candidate was not of good moral character. We said in that case:

> The board may not exercise discretion or make findings of fact concerning the eligibility of a candidate. That determination may only be made by a court, and the court may then direct the board to either place the candidate's name on the ballot or remove it, as the case may be.

300 Ark. at 410, 779 S.W.2d at 172.

Though *Craighead County* concerned a citizen's lawsuit to contest the eligibility of potential Justice-of-the-Peace candidates pre-election, the requirement for the filing of a petition for declaratory judgment and for a writ of *mandamus* has equal validity for the case at hand where a potential candidate's name has been struck from the ballot by the Election Commission. The striking was done by a secretary of the Election Commission after the Commission was advised by the County Clerk who in turn had been advised by the secretary of the Central Committee that Hill's candidacy did not pass muster due to lack of residency. This, of course, occurred after Hill had been certified by the Democratic Party as having completed all the necessary requirements for candidacy on March 29, 2002.

■■ At this stage of the election process, we disagree that Hill's remedy lay under the Democratic Party Rules, because he had already been certified as completing the steps to file as a proper candidate by that political party. At this stage, we are of the opinion that his remedy to determine residency rested in circuit court and not under Party Rules. We hold that Hill's recourse, pre-election and after certification as completing the steps to file as a candidate by the Democratic Party, was to file suit for declaratory judgment and *mandamus* on his eligibility point under the proce-

dure prescribed by this court in *State v. Craighead County Bd. of Election Comm'rs, supra.* Because he did nothing pre-election, we agree that he was never a candidate who could pursue an election contest and that his complaint for an election contest was appropriately dismissed. We affirm this point for a different reason than that relied on by the circuit court, which we, of course, can do. *See, e.g., Landers v. Jameson,* 355 Ark. 163, 132 S.W.3d 741 (2003); *Ferguson v. Kroger Co.,* 343 Ark. 627, 37 S.W.3d 590 (2001).

## II. Eligibility Decisions

Hill next contends that the circuit court erroneously concluded that each political party must determine who is qualified to be a candidate in a primary election for that particular party, because this court has consistently declared that political parties and their officers do not have the authority to determine the eligibility of a candidate where there is a dispute. Hill adduces *Jacobs v. Yeats,* 342 Ark. 243, 27 S.W.3d 734 (2000), and *Ivy v. Republican Party of Arkansas,* 318 Ark. 50, 883 S.W.2d 805 (1994), as authority for his position.

■ We question whether, after a political party has certified a candidate as meeting its filing requirements, it may initiate and conduct an investigation on its own on a matter like residency and then order the Election Commission to remove that candidate's name from the ballot. At this stage of the election process, it would appear to this court that the appropriate procedure to be followed by the political party, should the party wish to remove a certified candidate's name from the ballot pre-election, is to file a petition in circuit court for an eligibility determination and *mandamus* relief under the *Craighead County* procedures.[1]

■ Even so, when Hill learned on April 12, 2002, that his name had been struck from the ballot, it was incumbent upon him to seek a judicial determination of his eligibility under the procedure set out by this court in *State v. Craighead County Bd. of Election*

---

[1] We recognize that a party secretary does have the right to investigate a potential candidate's elegibility under our Election Code. *See* Ark. Code Ann. § 7-7-301(b)(2) (Repl. 2000). However, we interpret this investigation to occur pre-certification. Also, Rule 36(f) of the Democratic Party Rules contemplates notice to the potential candidate of failure to qualify after signing the party pledge and payment of the filing fee. But, again, disqualification under party rules would occur before party certification.

*Commr's, supra.* He chose instead to rely on the party chairman to rectify the situation, and this clearly was not sufficient to protect his rights. We further note that the election took place two years ago. As in *State v. Craighead County Bd. of Election Comm'rs, supra,* we consider this election matter to be moot but address the issue of eligibility pre-election to establish the appropriate procedure to follow in comparable cases in the future.

### III. Voiding the Election

■  For his third point, Hill claims that the May 21, 2002 preferential primary should be declared void as it pertains to the race for the Democratic Central Committee for Mississippi Township, just as this court voided the election in *Whitley v. Cranford,* 354 Ark. 253, 119 S.W.3d 28 (2003). Yet, again, voiding the election is not a proper remedy under these facts. As already stated, for an eligibility dispute post-certification but pre-election, Hill's remedy was to seek a judicial determination and *mandamus* relief. This, he did not do. As he was never a candidate and did not stand for election, an election contest is not a remedy available to him.

Affirmed.

DICKEY, J., not participating.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. I concur with the result reached by the majority. However, to the extent the majority opinion relies on *Whitley v. Cranford,* 354 Ark. 253, 119 S.W.3d 28 (2003), I strongly disagree. The *Whitley* decision is completely in conflict with *Files v. Hill,* 268 Ark. 106, 594 S.W.2d 836 (1980), and should be overruled. In her dissenting opinion in *Whitley,* Justice Imber set forth the correct analysis, explaining why the *Whitley* decision is wrong.