IN THE MATTER OF the ADOPTION OF SCD, *a Minor*

03-1283                                    186 S.W.3d 225

Supreme Court of Arkansas
Opinion delivered June 17, 2004

[Rehearing denied September 9, 2004.]

52

*Kaye H. McLeod*; and *Wilson & Associates*, by: *H. Keith Morrison*, for appellant.

*Gilbert Law Firm*, by: *Melinda R. Gilbert*, for appellee.

*Mary M. Rawlins*, attorney *ad litem*.

Tom Glaze, Justice. In this adoption case, we are called upon to decide under what circumstances it is necessary to

obtain the consent of a putative father before a child can be adopted pursuant to Ark. Code Ann. § 9-27-206 (Repl. 2002). The record has been filed under seal, and we refer to the parties by their initials: IT is the mother of the child placed for adoption; the KDs, from Albuquerque, New Mexico, are married and are seeking to adopt the baby; and TF is the putative father, who, prior to the baby's birth, registered as the baby's father under the Arkansas Putative Father Registry on May 15, 2003.

Fifteen-year-old IT, a resident of Mena, gave birth to a baby boy on June 2, 2003, and immediately put the baby up for adoption. On June 3, 2003, the KDs filed a petition for temporary guardianship in Pulaski County Circuit Court,[1] and on June 5, 2003, the KDs filed a petition for adoption in Polk County Circuit Court. In the petition, the KDs alleged that only the consent of the mother, IT, and her guardian ad litem was needed for the adoption. The KDs further alleged that TF, the putative father, was only entitled to notice of the adoption petition.

Four days later, on June 9, TF filed a response to the KDs' petition for adoption, and separately, he filed a petition for determination of paternity. In his petition, TF asked the trial court to order paternity testing to determine whether he was the biological father of the child, and he also sought custody of the baby if TF were determined to be the father.

On September 10, 2003, the KDs filed an amended petition for adoption. In it, they alleged again that IT and her guardian ad litem were the only parties who were required to consent. They further asserted that TF's consent was not required because he had not "legitimated" the child, as required by Ark. Code Ann. § 9-9-206(a)(2) (Repl. 2002).

On that same date, IT filed a consent to adoption, in which she consented to the adoption of her child by the KDs "conditioned" upon the court's finding TF's consent was not required and that the adoption was found to be in the best interests of the minor child. IT's "conditional" consent further provided that, in the event the court found TF's consent to be required, she "reserve[d] the right to withdraw [her] consent to the adoption and to reserve all parental rights [she] may have to [the] infant, as

---

[1] The baby was born at a hospital in Little Rock.

though [she] had not executed this document." Later, on September 13, 2003, IT signed a second, "unconditional" consent to adoption.

On September 16, 2003, the Polk County Circuit Court held trials on both TF's paternity action and the KDs' adoption petition. At the conclusion of the paternity trial, after having admitted the results of a paternity test that showed a 99.99% probability that TF was the father, the court declared TF to be the baby's father. However, having heard testimony from both IT and TF, the court delayed ruling on the custody issue. Later the same day, the court proceeded with the adoption trial.

The court and counsel for all sides noted that there was no issue about the KDs being appropriate adoptive parents; instead, the issues addressed were 1) whether IT had properly consented to the adoption, and 2) whether TF's consent was required. After hearing testimony, the trial court denied the adoption petition, finding that TF had legitimated the baby in accordance with § 9-9-206(a)(2), and that, consequently, IT and the KDs should have obtained TF's consent prior to the adoption. In its final written order, the court wrote that "[c]onsent of both the child's mother and respondent-father was necessary in order for [the KDs] to prevail herein. They had neither." The court dismissed the KDs' petition for adoption, and from that order, the KDs appeal, raising two points for reversal: 1) TF's consent to the adoption was never required; and 2) the KDs' petition for adoption should have been granted.

In addressing the first point, the court is called upon to determine what the phrase "otherwise legitimated" in § 9-9-206(a)(2) means. Thus, our standard of review is *de novo*, as it is for this court to decide what a statute means. *Greenhough v. Goforth*, 354 Ark. 502, 126 S.W.3d 345 (2003). We are not bound by the decision of the trial court, but unless it is shown that the circuit court's interpretation was wrong, we will accept its interpretation on appeal. *R.N. v. J.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001). The purpose of statutory interpretation is to give effect to the intent of the General Assembly. *R.N. v. J.M.*, *supra*.

Section 9-9-206(a)(2) establishes the persons required to consent to an adoption, and provides in relevant part as follows:

(a) Unless consent is not required under § 9-9-207, a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by:

\* \* \* \*

(2) *The father of the minor if the father* was married to the mother at the time the minor was conceived or at any time thereafter, the minor is his child by adoption, he has custody of the minor at the time the petition is filed, or he *has otherwise legitimated the minor* according to the laws of the place in which the adoption proceeding is brought.

(Emphasis added.) Consent to adoption, however, "is not required of . . . [t]he father of a minor if the father's consent is not required by § 9-9-206(a)(2)." Ark. Code Ann. § 9-9-207(a)(3) (Repl. 2002).

Here, the trial court determined that TF had "otherwise legitimated" the child because he had timely registered with the Arkansas Putative Father Registry. The statutes governing that registry provide that "the registration of the father with his consent in the . . . registry . . . shall constitute a *prima facie* case of establishment of paternity, and the burden of proof shall shift to the putative father to rebut such in a proceeding for paternity establishment." Ark. Code Ann. § 9-10-108(b) (Repl. 2002). The question before us is whether TF's registry some weeks prior to the birth of his child, coupled with his actions after the baby's birth, were sufficient to "otherwise legitimate" the baby. The KDs assert that the filing of the adoption petition served as a "cutoff date" that barred TF's attempt to subsequently legitimate the child by filing a petition for determination of paternity.

Arkansas has no case law that defines or explains what is meant by "otherwise legitimated." *Black's Law Dictionary* defines "legitimate" as "to make lawful; to confer legitimacy; *e.g.*, to place a child born before marriage on the legal footing of those born in lawful wedlock." *Black's Law Dictionary* 901 (6th ed. 1990). TF argues — and the trial court ruled — that his signing up with the Putative Father Registry and filing his petition for determination of paternity was sufficient to legitimate the child in this case. TF notes that, after registering with the Putative Father Registry, he never attempted to rebut the presumption of paternity established by that action, and he asserts that he "embraced" that presumption by initiating a proceeding to obtain custody of his child. Further, at the trial on the paternity petition, TF testified that, once IT had decided to keep the baby, he offered to marry her. He also testified that no one informed him of when the baby was born, and that he filed the paternity petition as soon as he found out that the KDs'

adoption petition had been filed. Clearly, TF's actions indicate his interest in and willingness to confer legitimacy on the child.

The KDs, on the other hand, argue that the filing of the adoption petition served as a kind of cutoff date to determine the rights of the parties involved, and the fact that TF took actions to legitimate the baby after the adoption petition was filed should be of no moment. It is true that there are Arkansas cases that describe the filing of the adoption petition as a "cutoff date" for determining whether a natural parent must be given an opportunity to consent to the adoption. However, those cases are factually distinguishable.

For instance, in *Dixon v. Dixon*, 286 Ark. 128, 689 S.W.2d 556 (1985), this court was presented with the question of when, under § 9-9-207 (then Ark. Stat. Ann. § 56-207), a parent's consent was not required. The court there first noted that consent was not required of a parent of a child to be adopted when the child is in the custody of another "if the parent for a period of at least one year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree." *See* § 9-9-207(a)(2). Using that language, the court then determined that the one-year period should be measured back from the time of the filing of the adoption petition, rather than from the time the adoption decree was rendered. *Dixon*, 286 Ark. at 130.

The same result was obtained in *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979), where this court again was faced with a question of how long the parent had failed to support the child; the *Pender* court held that the requisite period for abandonment had to be "any consecutive period constituting a total of one year between [the day the child was born] and [the date] when the petition for adoption was filed." *Pender*, 266 Ark. at 29.

The KDs rely heavily on these cases in support of the argument that it is a putative father's actions *only up to the time of filing of the adoption petition* which are legally relevant. However, as noted above, the subdivision of the statute involved in both *Dixon* and *Pender* was § 9-9-207(a)(2), which provides that no consent is required if the parent has had nothing to do with the child to be adopted for a period of one year. Thus, in *Dixon* and *Pender*, it was obvious that the court needed a "starting date" from which to

determine whether that one-year period had run. That date, the court determined, was the date of the filing of the adoption petition.

■ Here, however, there is no such temporal restriction. Section 9-9-107(a)(3) simply says that consent is not required of the father "if the father's consent is not required by § 9-9-206(a)(2)"; § 9-9-206(a)(2), in turn, provides that the father's consent is required if he has "otherwise legitimated" the child to be adopted. There is no explicit time period established in which the father must have accomplished that legitimation. Thus, the fact that TF did not file his paternity petition until a few days after the petition for adoption was filed does not preclude a finding that he "otherwise legitimated" the baby. This is not a case of a "deadbeat dad" or a parent who has abandoned his children; indeed, at the trial on the adoption petition, IT and the KDs agreed that this was not a case involving abandonment, as that term is defined in Ark. Code Ann. § 9-9-202(7) (Repl. 2002).[2]

■ Furthermore, TF took additional steps after filing his paternity petition that clearly indicate his intent to legitimate the child. For example, he testified that he was pursuing a bachelor of science degree from Baylor University. In addition, he stated that he wanted to be "responsible for [the baby] in his growth and development," and that he would allow IT to be as involved in the baby's life as she wanted to be. When asked what he had done to prepare for raising the baby, TF stated that he had called and interviewed several day cares in the Waco, Texas, area, and had also looked into finding a pediatrician and health insurance for his son. TF testified that, if he were awarded custody, he would take his son with him to Baylor, and his (TF's) mother planned to follow him down there to help out until TF and the baby could get established. Clearly, TF has "legitimated" this child, not only by signing the Putative Father Registry, but also by petitioning for a

---

[2] "Abandonment" means "the failure of the parent to provide reasonable support and to maintain regular contact with the child through statement or contact, when the failure is accompanied by an intention on the part of the parent to permit the condition to continue for an indefinite period in the future, and failure to support or maintain regular contact with the child without just cause for a period of one (1) year shall constitute a rebuttable presumption of abandonment[.]" § 9-9-202(7).

determination of paternity, and by taking significant steps to prepare for having the baby with him if he is awarded custody by the trial court.

In conclusion, we hold that the "cutoff date" described in *Dixon* and *Pender* is inapplicable to the situation before us. Because TF legitimated the child by filing with the putative father registry, initiating a petition to determine paternity, and taking other actions to establish his parentage, the trial court correctly ruled that TF's consent was required before the adoption could occur. Because TF did not consent to the adoption, the trial court correctly denied the KDs' petition for adoption.

As we affirm on this first issue, we need not reach or address the KDs' second point on appeal, wherein it is stated, without any real argument or citation to authority, that the trial court should have granted the adoption petition.[3]

Affirmed.

---

[3] Neither do we reach TF's alternative argument, wherein he contends that IT never validly consented to the adoption.