Isabelle TAYLOR  *v.*  Travis FINCK

04–422                                              211 S.W.3d 532

Supreme Court of Arkansas
Opinion delivered July 1, 2005

*Dobson Law Firm, P.A.*, by: *R. Margaret Dobson*, for appellant.

*Gilbert Law Firm*, by: *Melinda R. Gilbert*, for appellee.

B ETTY C. DICKEY, Justice. Isabelle Taylor (Isabelle) appeals the denial of certain lying-in expenses in a paternity action, contending that the trial court's order violates Ark. Code Ann. § 9-10-110 (Repl. 2002). This court previously dealt with these parties in *In the Matter of Adoption of SCD*, 358 Ark. 51, 186 S.W.3d 225 (2004). Isabelle is the mother of the child, and the DePriests are the couple who sought to adopt Isabelle's baby. Travis Finck (Travis) is the father, who, prior to the baby's birth, registered as the baby's father under the Arkansas Putative Father Registry on May 15, 2003.

On September 16, 2003, the Polk County Circuit Court held trials on Travis' paternity action and the DePriests' adoption petition. The trial court declared Travis the biological father of the baby after admitting a test that established paternity to a 99.99% degree of certainty. Later the same day, the trial court denied the adoption petition, finding that Travis had legitimated the baby in accordance with § 9-9-206(a)(2), and that, consequently, Isabelle and the DePriests should have obtained Travis' consent prior to the adoption. The trial court dismissed the petition for adoption, the DePriests appealed, and this court affirmed. *In the Matter of Adoption of SCD, supra.*

At the paternity proceeding, the trial court stated that "the contested issues now are the lying-in expenses and the matter of custody, visitation and support." Isabelle's mother, Brenda Taylor (Mrs. Taylor), testified that she prepared a list of lying-in expenses that she paid during Isabelle's pregnancy, including blood work, lab work, ultrasound, medications, and psychological counseling. In addition, she asked for related non-medical expenses caused by the pregnancy, namely, maternity clothing, travel from Mena to Little Rock for treatment, Isabelle's room and board during the pregnancy, and Isabelle's schooling in the form of correspondence courses. Mrs. Taylor also listed loss of work income because of

driving Isabelle to and from Little Rock, the cost of telephone calls made to doctors, Medicaid, and other related expenses. Finally, Mrs. Taylor listed "After Pregnancy Expenses Due" for private schooling, since Isabelle was unable to return to high school "because of damage to her reputation."

Mrs. Taylor also added expenses that the DePriests had paid, saying "they paid bills that were owed by us and were directly related to the birth of the baby, including one of $750.00 for anesthetic during delivery." Mrs. Taylor testified that if the DePriests "turn out not to be adoptive parents, I expect to have to pay them."

On cross-examination, Mrs. Taylor admitted that Isabelle was covered on her health insurance, "however, from the very beginning they told us there was no insurance. We didn't file every claim because they told us they did not pay anything related to a diagnosis of pregnancy. . . I did not continue to submit claims to the insurance company. I sent a $225 bill and received a denial on that, but I did not submit the other bills because I did not want Isabelle's file full of denials regarding her pregnancy."

The trial court found that the legitimate lying-in expenses included the Pathology Labs of Arkansas for $35, Cornerstone Clinic for $442, and the $85.86 medication expense. The trial court also determined that neither counseling nor long distance telephone calls were lying-in expenses, saying:

> There is no evidence, however, supporting the content or payment status of the counseling, so that is not allowed. In addition, I don't know of any cases that state the maternity clothes, or any of the other listed expenses, are lying-in expenses. The statute specifically says lying-in expenses and not everything involved with the birth of the child. Therefore, the total amount of lying-in expenses is $562.86. I think you should try to use your insurance . . . I believe you have made an adequate record on the items that are labeled 'DePriests paid.' The DePriests haven't filed a claim for lying-in expenses that they paid because they are not parties here and they're not involved in this in any way, shape or form whatsoever.

The trial court also found that Travis would pay the attorney ad litem's fee of $2,000.

A chancery case is reviewed *de novo* on the record, but we will not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Bean v. Office of Child Support Enforcement,* 340

Ark. 286, 9 S.W.3d 520 (2000); *Moon v. Marquez*, 338 Ark. 636, 999 S.W.2d 678 (1999); *Office of Child Support Enf. v. Eagle*, 336 Ark. 51, 983 S.W.2d 429 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.; Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269 (1999).

Ark. Code Ann. § 9-10-110 provides:

> (a) If it is found by the court that the accused is the father of the child, the court shall render judgment against him for the lying-in expenses in favor of the mother, person, or agency incurring the lying-in expenses, if claimed.
>
> (b) If the lying-in expenses are not paid upon the rendition of the judgment, together with all costs which may be adjudged against him in the case, then the court shall have the power to commit the accused person to jail until the lying-in expenses are paid, with all costs.
>
> (c)(1) Bills and invoices for pregnancy and childbirth expenses and paternity testing are admissible as evidence in the chancery court or juvenile division thereof without third-party foundation testimony if such bills or invoices are regular on their face.
>
> (2) Such bills or invoices shall constitute prima facie evidence of amounts incurred for such services or for testing on behalf of the child.

There is a dearth of reported cases in Arkansas that discuss Ark. Code Ann. § 9-10-110, with the main case being *Eaves v. Dover*, 291 Ark. 545, 726 S.W.2d 276 (1987). In *Eaves*, the father filed a petition seeking a paternity determination of his son. The mother answered, admitting appellant was the father of the child, but sought a denial of his visitation rights and recovery of her lying-in expenses, child support, and attorney's fees. The court determined appellant to be the natural father, and ordered him to pay lying-in expenses of $3,113.65 and attorney's fees of $500. The trial court also affirmed the referee's order and awarded an additional attorney's fee of $350. Appellant contended that Ark.

Stat. Ann. 34-706 (Supp. 1985)[1] was a gender-based statute that violated the equal protection clause of the Fourteenth Amendment to the U.S. Constitution, arguing that, because the statute was unconstitutional, the award of lying-in expenses and attorney's fees should be reversed. This court held that § 34-706 was constitutional, and affirmed the trial court.

■ As early as 1910, this court, in construing § 34-706, held that the award of lying-in expenses must be confided largely to the discretion of the trial court. *Belford v. State*, 96 Ark. 274, 131 S.W. 953 (1910). In 1979, the General Assembly amended § 34-706, empowering the trial court with the discretion to, at any time, enlarge, diminish or vacate any order or judgment in these filiation proceedings as justice may require. *See* Act 718 of 1979. Thus, if any doubt existed that a trial court possessed discretion in the award of lying-in expenses, attorney's fees, or support prior to 1979, the General Assembly clearly eliminated that doubt by enacting Act 718. In 1997, the General Assembly rewrote sections (a) and (c), leaving the present-day statute.

■ The major purpose of Arkansas' filiation laws is to provide a process by which the putative father can be identified so that he may assume his equitable share of the responsibility for his child. However, a trial court, in awarding lying-in expenses or attorney's fees, may exercise its discretion in determining the amount that the father should bear. Furthermore, the trial court may even consider the mother's financial means when making an award. *Eaves, supra.* Ark. Code Ann. § 9-10-110 does not dictate that a father pay for everything that may be considered to be involved in the birth of a child.

Among the few reported Arkansas appellate cases that discuss Ark. Code Ann. § 9-10-110, none either defines "lying-in expense," or discusses what items may or may not constitute such

---

[1] Section 34-706 provided in relevant part:

If it is found by the court that the accused is the father of the child, the court shall render judgment against him for the lying-in expenses in favor of the mother, or person who incurred the same, if required or claimed, for a sum not less than twenty-five dollars ($25), and if the same shall not be paid upon the rendition of such judgment, together with all costs which may be adjudged against him in said case, then the court shall have the power to commit the accused person to jail until the same shall be paid, with all costs; ...

expenses, or says who may claim the expense. Lying–in expenses could include those expenses that are paid to ensure a safe birth and healthy infant. Such expenses are not for the benefit of the mother, even though the mother certainly receives an indirect benefit. *Baby Girl D*, 517 A.2d 925, 512 Pa. 449 (1986). "Thus, payment by adoptive parents for counseling natural mothers in preparation for relinquishment of parental rights falls outside the guideline that permissible payments directly benefit the child." *Id.* "Lamaze classes, pre-natal care and sonograms. These expenses were all disallowed. Again, these expenses are not directly connected with the birth, and, thus, are outside the parameters of the traditional allowable expenses in adoption." *Id.* "The fact that the child may enjoy an indirect benefit from these services cannot provide a basis for permitting their provision for the mother at the expense of prospective adopters." *Id.*

In Arkansas, lying–in expenses continue to be left to the discretion of the trial court after the complaining party sufficiently meets its burden of proof. Such expenses should include, but are not limited to, medical costs. Lying–in expenses normally would not include items such as maternity clothes, lost wages, or counseling.

Isabelle argues that the lying–in expenses were properly claimed and judgment should have been rendered against Travis for those amounts. At trial, Mrs. Taylor presented a summary of expenses relating to Isabelle's pregnancy and delivery, which, although not itemized, appear to be:

| | |
|---|---|
| Counseling | $ 280.00 |
| Maternity clothes | 596.62 |
| DePriests paid: | |
| Baptist Health Med. Center | 6,573.06 |
| Cornerstone Clinic | 2,604.00 |
| Ark. Health G Anesthesia — Labor & Del. | 750.00 |
| Path. of Ark. — Lab | 45.55 |
| Path. of Ark. — Lab | 14.55 |
| Medicaid Pending — unpaid: | |
| Baptist Health | 763.35 |
| LR Children's Clinic | 108.00 |
| TOTAL: | $11,735.13 |

Mrs. Taylor testified that she had a $280 bill for counseling, but nothing that indicated that the counseling was for her daughter. Therefore, the trial court found that there was "no evidence whatsoever what the counseling consisted of." The issue was not whether counseling may or may not be a reasonable and necessary expense relating to pregnancy and childbirth, but whether Isabelle met her burden of proof. We cannot say that the trial court erred with regard to denying counseling as a lying-in expense. There are no Arkansas cases that consider maternity clothes as a lying-in expense, and this court will not do so now.

Isabelle seeks an award of $9,987.16 for the expenses the DePriests paid, however, the DePriests never made a claim for those medical expenses. The trial court stated that it would have considered such a claim if the DePriests had made one. We affirm on this point, but for a different reason than that relied upon by the circuit court. See, e.g., *Hill v. Carter,* 357 Ark. 597, 184 S.W.3d 431 (2004); *Ferguson v. Kroger Co.,* 343 Ark. 627, 37 S.W.3d 590 (2001). The trial court denied the lying-in expenses based on an erroneous interpretation of who may receive payment. Ark. Code Ann. § 9-10-110 states that the father shall pay lying-in expenses "in favor of the mother, person, or agency *incurring* the lying-in expenses, if claimed." (Emphasis added). Here, Mrs. Taylor did not provide adequate proof that she incurred the expenses allegedly paid by the DePriests.

Finally, Isabelle asserts she should be awarded $871.35 for a hospital bill and children's clinic bill, under "Medicaid Pending – Unpaid." The trial court found, "[w]ith respect to the last two items, they have not been paid. If they have been paid, I would allow them with adequate proof on them. I can't just accept blind words here. There's just not sufficient proof. You have the burden of proof showing that this is something that has been paid or should be paid by them, Baptist Health, in the amount of $763.35 and Little Rock Children's Clinic in the amount of $108. I want to be sure that you understand the judgment. I am trying to allow every lying-in expenses the law allows." The trial court then denied the "Medicaid Pending – Unpaid" expenses, stating, "If there's insurance to cover part of it, I think it is foolish not to let the insurance pay for it."

The issue was not whether the "Medicaid Pending — unpaid" expenses were legitimate lying-in expenses relating to pregnancy and childbirth, but whether Isabelle met her burden of

proof. The trial court stated that he was trying to approve every lying-in expense allowable, but that Isabelle failed to meet her burden that the Baptist Health bill and the Little Rock Children's Clinic bill had been paid. The trial court used the word "paid" instead of "incurred," as the statute provides, however, we cannot say that the court abused its discretion in not awarding the Medicaid expenses, because Isabelle did not prove that the expenses had either been paid or incurred.

Affirmed.

BROWN and IMBER, JJ., concur in part and dissent in part.

A NNABELLE CLINTON IMBER, Justice, concurring and dissenting. While I agree in part with the result reached by the majority, the majority neglects to address a major issue that was raised in this case. Arkansas Code Annotated § 9-10-110 (Repl. 2002) was revised by the Arkansas General Assembly in 1997. We have not interpreted the statute since its revision. An issue of statutory interpretation arises here regarding who is entitled to bring a claim under section 9-10-110. I agree that we should affirm on the issues of the expenses paid by the DePriests, the counseling fees, and the maternity clothes. However, under a proper statutory construction analysis, I believe that the circuit court abused its discretion in concluding that a claim for expenses designated "Medicaid-Pending Unpaid" was invalid under the statute. Therefore, as to that claim, I must respectfully dissent.

The majority acknowledges that a person making a claim under Arkansas Code Annotated § 9-10-110 must prove that he or she has "incurred" a lying-in expense in order to make a valid claim. Yet, the majority summarily disposes of the issue without delving into any explanation concerning what proof is necessary to satisfy the "incurred" element of the statute. This issue is integral to the disposition of the case at bar.

Arkansas Code Annotated § 9-10-110 provides as follows: "If it is found by the court that the accused is the father of the child, the court shall render judgment against him for the lying-in expenses in favor of the mother, person, or agency *incurring* the lying-in expenses, if claimed." Ark. Code Ann. § 9-10-110(a) (Repl. 2002) (emphasis added). The circuit court interpreted the statute to require that a person must have paid an expense before he or she can bring a claim under the statute. The court relied on

this reasoning to deny several of Isabelle's claims for lying-in expenses. Such an interpretation does not comport with our well-settled rules of statutory construction. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Weiss v. McFadden*, 353 Ark. 868, 874, 120 S.W.3d 545, 550 (2003). There is no need to resort to rules of statutory construction when the language of the statute is plain and unambiguous. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.* We are hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

The word "incur" is defined in Black's Law Dictionary as "to suffer or bring on oneself (a liability or expense)." *Black's Law Dictionary* 782 (8th ed. 2004). Similarly, it means "to become liable or subject to" according to *Webster's Third New International Dictionary* 1146 (2002). Under a plain-language reading of Arkansas Code Annotated § 9-10-110, it is clear that a person is not required to have actually paid the expense in order for the expense to be incurred. The rationale for not requiring actual payment is clear: The fact that a debt is incurred but still remains unpaid does not mean that the liability for that debt has been extinguished. Furthermore, to require actual payment of expenses, such as hospital and doctor bills, before any claim could be made would effectively shut the proverbial "door" to most claims under the statute.

Subsection (2) of Ark. Code Ann. § 9-10-110 provides a method for proving that lying-in expenses have been incurred. The statute states:

> (c)(1) Bills and invoices of pregnancy and childbirth expenses and paternity testing are admissible as evidence in the chancery court or juvenile division thereof without third-party foundation testimony if such bills or invoices are regular on their face.

(2) Such bills or invoices shall constitute prima facie evidence of amounts *incurred* for such services or for testing on behalf of the child.

Ark. Code Ann. § 9-10-110(c)(1), (2) (Repl. 2002) (emphasis added). In *Belford v. State*, 96 Ark. 274, 280, 131 S.W. 953, 955 (1910), we interpreted an earlier version of this statute and held that the amount awarded for lying-in expenses "must be confided largely to the discretion of the trial court."

Isabelle has claimed certain medical expenses that were paid by the DePriests, the potential adoptive parents of Isabelle's child. Both parties agreed that the expenses had been paid by the DePriests, but that the DePriests had not attempted to make a claim under Arkansas Code Annotated § 9-10-110. Also, no evidence was presented by the Taylors to show that they still retained liability for those expenses. The circuit court concluded that because the DePriests had paid the expenses, they were the only ones who could claim the expenses under the statute. I disagree with this reasoning because, as discussed earlier, the statute requires a person to "incur," and not to "pay," in order to claim lying-in expenses. Nevertheless, I would affirm on other grounds.

Under the statute, a person must prove that he or she has incurred liability for a lying-in expense in order to make a claim for it. In other words, a claimant must prove that he or she has incurred the expense and remains liable for the expense at the time the claim is made. If the status of his or her liability for the expense is challenged, then the claimant has the burden of proving that he or she still remains liable for the expense.

In the instant case, it is undisputed that the Taylors initially incurred the expenses that were paid by the DePriests because the bills for these expenses were all directed to either Mrs. Taylor or Isabelle. In the absence of any proof to the contrary, such as an agreement between the DePriests and the creditors whereby the DePriests agreed to be responsible for these expenses, the Taylors incurred the expenses. However, once the DePriests paid those expenses, it would be inequitable for the Taylors to bring a claim on a debt that no longer existed. If the Taylors had presented evidence that, even though the DePriests paid the expenses, they still remained liable for the expenses, then their claim could be considered by the circuit court. For example, the Taylors could have presented evidence of an agreement between the DePriests

and themselves that, if the adoption was not finalized, then the Taylors would owe the DePriests for the expenses paid by them. Because the record contains no evidence to establish that the Taylors continued to be liabile for the expenses after the DePriests paid the expenses, I cannot conclude that the circuit court abused its discretion on this issue.

With regard to the claim for counseling fees, the only evidence presented to the circuit court was a receipt that did not bear any indication of who received the counseling or what it was for. Thus, I agree with the majority that the circuit court did not abuse its discretion in denying Isabelle's claim for counseling fees. Likewise, with regard to the claim for maternity clothing, it was within the circuit court's discretion to determine whether to include this expense in the award. Accordingly, I agree to affirm the circuit court on this point also.

Finally, Isabelle has claimed medical bills that at the time of trial were marked "Medicaid — Pending Unpaid." The majority concludes that the evidence before the circuit court is not sufficient to prove that the Taylors either paid or incurred the expenses in question. I disagree.

It is undisputed that these bills were incurred by the Taylors. The bills were marked with either Isabelle or Mrs. Taylor's name; thus, these bills were prima facie evidence pursuant to Ark. Code Ann. § 9-10-110(c) that the expenses had been incurred by the Taylors. Moreover, no evidence was presented to show that the bills had been paid. On this record, it is clear that the Taylors still remained liable for these bills. Consequently, I believe the circuit court abused its discretion in concluding that this claim was invalid under the statute. The issue of whether to award these bills as lying-in expenses under Ark. Code Ann. § 9-10-110 should be remanded to the circuit court for determination in a manner consistent with this court's opinion.

For the above-stated reasons, I respectfully concur in part and dissent in part.

BROWN, J., joins.